UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARIE MAYEROVA and ARIANA CHRETIEN, individually and on behalf of all those similarly situated** | : : : | Case No. 18-cv- 11909-GCS-RSW |
| Plaintiff, | : : : | Hon.  George Caram Steeh |
| | : | Mag.   R. Steven Whalen |
| v. | : : | |
| **EASTERN MICHIGAN UNIVERSITY, JAMES SMITH, SCOTT WETHERBEE, and THE BOARD OF REGENTS,** | : : : : : | **DEFENDANTS' MOTION TO DISMISS** **ORAL ARGUMENT REQUESTED** |
| Defendants. | : : | |

ROBERTS & FREATMAN
*Attorneys for Plaintiffs*
Tracy E. Van den Bergh (P70066)
125 N. Huron Street
Ypsilanti, MI 48197
(734) 483-4166
(734) 483-4368 (Fax)
tracy@roberts-freatman.com

NEWKIRK ZWAGERMAN
*Attorneys for Plaintiffs*
Jill Zwagerman, AT0000324
Beatriz Mate-Kodjo AT0012331
Lori Bullock AT0012240
521 E. Locust Street, Suite 300
Des Moines, IA 50309
Telephone: 515-883-2000
Fax: 515-883-2004
jzwagerman@newkirklaw.com
bmate-kodjo@newkirklaw.com
lbullock@newkirklaw.com

MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
Brian M. Schwartz (P69018)
Robert T. Zielinski
Megan P. Norris (P39318)
Jacob Hogg (P81275)
*Attorneys for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com
zielinski@millercanfield.com
norris@millercanfield.com
hogg@millercanfield.com

Defendants, through their counsel, move to dismiss Plaintiffs' Complaint and Jury Demand pursuant to Fed. R. Civ. P. 12(b)(6) for the following reasons, as more fully explained in the attached Brief:

1.      On June 15, 2018, Plaintiffs filed a two count lawsuit against Eastern Michigan University ("EMU" or the "University"), James Smith, Scott Wetherbee, and the EMU Board of Regents.

2.      Count I asserts a claim under Title IX against EMU and the Board of Regents.   Specifically, Plaintiffs allege that EMU "fail[s] to provide female students an equal opportunity to participate in varsity intercollegiate athletics in violation of Title IX and 34 C.F.R A [sic] §106.41(c)(1)."  (Dkt#1, Compl, ¶78).

3.      Count II relies on the same facts as Count I and alleges that Defendants violated the Equal Protection Clause when it reduced four sports teams (men's wrestling, men's swimming and diving, women's softball, and women's tennis), which affected male and female student-athletes.

4.      Plaintiff's Complaint should be dismissed for the following reasons:

    a. Count II fails to state a claim because Plaintiffs cannot establish intentional discrimination as their Complaint concedes that the University treated male and female student-athletes the same when the University disbanded two male and two female athletic teams.

1

b. Count I fails to state a claim for relief because Plaintiffs cannot establish intentional discrimination and because there is no private right of action to enforce the Title IX regulations (and sub-regulation-level administrative policy guidance) that form the basis for Plaintiffs' claim;

5. Additionally, to the extent Plaintiffs seek money damages (as alleged in their Complaint), then the individual defendants are entitled to qualified immunity and should be dismissed.

6. Pursuant to Local Rule 7.1, on August 16, 2018, defense counsel sought concurrence in the relief sought from Plaintiffs' attorneys. During a conference, defense counsel explained the nature of the motion and its legal basis. Plaintiffs' counsel Lori Bullock denied concurrence in the relief sought.

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety and with prejudice.

Respectfully submitted,

/s/Brian M. Schwartz
Miller, Canfield, Paddock and Stone, P.L.C.
Attorneys for Defendants
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 963-6420
schwartzb@millercanfield.com
P69018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARIE MAYEROVA and ARIANA CHRETIEN, individually and on behalf of all those similarly situated** | : | Case No. 18-cv- 11909-GCS-RSW |
| | : | |
| Plaintiff, | : | Hon.  George Caram Steeh |
| | : | Mag.   R. Steven Whalen |
| v. | : | |
| | : | **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| **EASTERN MICHIGAN UNIVERSITY, JAMES SMITH, SCOTT WETHERBEE, and THE BOARD OF REGENTS,** | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

ROBERTS & FREATMAN
*Attorneys for Plaintiffs*
Tracy E. Van den Bergh (P70066)
125 N. Huron Street
Ypsilanti, MI 48197
(734) 483-4166
(734) 483-4368 (Fax)
tracy@roberts-freatman.com

NEWKIRK ZWAGERMAN
*Attorneys for Plaintiffs*
Jill Zwagerman, AT0000324
Beatriz Mate-Kodjo AT0012331
Lori Bullock AT0012240
521 E. Locust Street, Suite 300
Des Moines, IA 50309
Telephone: 515-883-2000
Fax: 515-883-2004
jzwagerman@newkirklaw.com
bmate-kodjo@newkirklaw.com
lbullock@newkirklaw.com

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Brian M. Schwartz (P69018)
Robert T. Zielinski
Megan P. Norris (P39318)
Jacob Hogg (P81275)
*Attorneys for Defendants*
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com
zielinski@millercanfield.com
norris@millercanfield.com
hogg@millercanfield.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .............................v

STATEMENT OF ISSUES PRESENTED....................................................vi

I.   INTRODUCTION ................................................................1

II.  STATEMENT OF FACTS .....................................................2

III. ARGUMENT......................................................................4

    A.   Standard of Review ...................................................4

    B.   Plaintiffs Fail to State a Claim that Defendants Violated the Equal Protection Clause ................................................7

    C.   Plaintiffs Fail to State a Title IX Claim Because They Fail to Allege Intentional Discrimination and Because There is No Private Right of Action to Enforce the Regulation Upon Which They Rely. ...............................................................11

    D.   The Individual Defendants are Entitled to Qualified Immunity ........17

IV.  CONCLUSION...................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ................................................................6

*Adams v. Metiva*,
  31 F.3d 375 (6th Cir. 1994) ...............................................................18

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)......................................................................*passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................5, 6, 7, 9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................5, 6, 7, 9

*Binelli v. Charter Twp of Flint*,
  488 F. App'x 95 (6th Cir. 2012) ..................................................18, 19

*Bing v. City of Whitehall*,
  456 F.3d 555 (6th Cir. 2006) ..............................................................19

*Brosseau v. Haugen*,
  543 U.S. 192 (2004)............................................................................19

*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979)............................................................................15

*Center for Bio-Ethical Reform v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) ................................................................7

*Dixon v. Univ. of Toledo*,
  702 F.3d 269 (6th Cir. 2012) ................................................................8

*Doe v. Lower Merion Sch. Dist.*,
  665 F.3d 524 (3d Cir. 2011) ..........................................................10, 11

*Doe v. Ohio State Univ.*,
  239 F. Supp. 3d 1048 (S.D. Ohio 2017) ...............................................8

*Gragg v. Kentucky Cabinet for Workforce Development*,
   289 F.3d 958 (6th Cir. 2002) ................................................................19

*Horner v. Kentucky High Sch. Athletic Ass'n*,
   43 F.3d 265 (6th Cir. 1994) .......................................................7, 8, 20

*Horner v. Kentucky High School Athletic Ass'n*,
   206 F.3d 685 (6th Cir. 2000) ................................................................12

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977)................................................................................12

*Jackson v. Birmingham Bd of Educ.*,
   544 U.S. 167 (2005)................................................................................12

*Lillard v. Shelby County Board of Education*,
   76 F.3d 716 (6th Cir. 1996) ....................................................................2

*Maciariello v. Sumner*,
   973 F.2d 295 (4th Cir. 1992) ................................................................19

*Marie v. American Red Cross*,
   771 F.3d 344 (6th Cir. 2014) .............................................................8, 9

*New Albany Tractor v. Louisville Tractor*,
   650 F.3d 1046 (6th Cir. 2011) ...............................................................7

*Russo v. City of Cincinnati*,
   953 F.2d 1036 (6th Cir. 1992) .............................................................18

*Silberstein v. City of Dayton*,
   440 F.3d 306 (6th Cir 2006) ................................................................18

*Simmonds v. Genesee Cnty*,
   682 F.3d 438 (6th Cir. 2012) ...............................................................17

*Spulock v. Fox*,
   716 F.3d 383 (6th Cir. 2013) ...............................................................10

*Stoudemire v. Michigan Dept. of Corrections*,
   705 F.3d 560 (6th Cir. 2013) ...............................................................18

*Wolfe v. Perry*,
   412 F.3d 707 (6th Cir. 2005) (§1983) ...................................................................2

**Statutes**

42 U.S.C. §1983 ...........................................................................................................17

§601 of Title VI, 42 U.S.C. §2000d ..............................................................12, 14, 15

§602 of Title VI, 42 U.S.C. §2000d-1 ..........................................................14, 15, 16

§901 of Title IX, 20 U.S.C. §1681 ......................................................................*passim*

§902 of Title IX, 20 U.S.C. §1682 ................................................................12, 15, 16

MCL 600.5805(10) ........................................................................................................2

**Court Rules**

Fed. R. Civ. P. 8(a) .......................................................................................................4

Fed. R. Civ. P. 12(b)(6) ...............................................................................................2

**Other Authorities**

U.S. Const. amend. XIV, §1 .....................................................................................8, 9

## Controlling or Most Appropriate Authority

§901 of Title IX, 20 U.S.C. §1681

§902 of Title IX, 20 U.S.C. §1682

*Ability Center of Greater Toledo v. City of Sandusky,* 385 F.3d 901 (6th Cir. 2004)

*Alexander v. Sandoval*, 532 U.S. 275 (2001)

*Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265 (6th Cir. 1994)

*Simmonds v. Genesee Cnty*, 682 F.3d 438 (6th Cir. 2012)

*Spulock v. Fox,* 716 F.3d 383 (6th Cir. 2013)

*Stoudemire v. Michigan Dept. of Corrections*, 705 F.3d 560 (6th Cir. 2013)

## Statement of Issues Presented

I.     Should the Court dismiss Plaintiffs' Equal Protection claim because Plaintiffs do not plausibly allege that Defendants engaged in intentional discrimination based on gender where they admit that the sole actionable adverse action taken affected both male and female student-athletes?

Defendants assert that the answer is "yes"

II.    Should the Court dismiss Plaintiffs' Title IX claim because Plaintiffs do not state a plausible claim for relief where they fail to allege intentional discrimination and because they seek to enforce regulations that do not provide a private right of action?

Defendants assert that the answer is "yes"

III.   In the event the Court does not dismiss Plaintiffs' claims in their entirety, should the Court (a) strike Plaintiffs' claim for money damages due to their concession on the record that they are only seeking equitable relief, and (b) dismiss the individual defendants on qualified immunity grounds to the extent Plaintiffs seek money damages?

Defendants assert that the answer is "yes"

## I.      Introduction

Dissatisfied with Eastern Michigan University's budgetary decision to eliminate four sports teams, Plaintiffs filed a putative class action lawsuit seeking to have the Court require EMU to recreate the two women's teams.  According to Plaintiffs, EMU's actions do not comply with regulations and policy guidance and therefore violate Title IX and the Equal Protection Clause.

Plaintiffs Complaint should be dismissed for failure to state a claim upon which relief can be granted.  An essential element of both claims is proof that the University intentionally or purposefully discriminated against women.  Plaintiffs fail to allege any facts or circumstances that would support an intentional discrimination claim.  Indeed, some of Plaintiffs' affirmative allegations negate their ability to state a claim, as those allegations establish that male student-athletes experienced a disproportionately adverse effect from the cuts.  The absence of any allegations that could plausibly support a finding of intentional discrimination is fatal to Plaintiffs' claims.

Plaintiffs instead allege that EMU's athletic programs are not in compliance with certain regulations as interpreted in a series of Policy Interpretations published by the United States Department of Education's Office of Civil Rights ("OCR").  Even assuming arguendo that EMU is not compliant with the Policy Interpretation, lack of compliance is not equivalent to the intentional

discrimination required to state a claim under Title IX or the Equal Protection Clause. Moreover, alleged lack of compliance with the Policy Interpretation is not enforceable by a private right of action under Title IX because the regulation forbids conduct that is not itself intentional discrimination. Accordingly, Plaintiffs fail to state a claim under either the Equal Protection Clause or Title IX.

## II.    Statement of Facts[1]

Stripped of conclusions and characterizations, Plaintiffs' Complaint alleges that in March 2018, EMU eliminated four sports: women's tennis and softball, and men's wrestling and swimming and diving. (Dkt#1, Compl, ¶57).[2] Plaintiffs further allege that women's athletic participation opportunities at EMU have historically not been proportionate to the ratio of women in EMU's student body. (*Id.* ¶56). Plaintiffs acknowledge that the discontinuance of the four sports

---

[1] For the purposes of this Motion only, Defendants assume – as they must under motions brought pursuant to Fed. R. Civ. P. 12(b)(6) – that the facts alleged in Plaintiffs' Complaint are true.

[2] The only discrete decision that Plaintiffs challenge is the March 2018 decision to eliminate the four sports. (Dkt#1, Compl, at p. 1 (Introduction), ¶¶2, 56, 58). To the extent they mention an alleged preexisting disparity in the proportion of women student-athletes to the proportion of women students, any decisions that might have led to that status are beyond the scope of the litigation. Plaintiffs clearly experienced no harm from decisions about which sports to offer or the roster sizes thereof prior to March 2018, as both allege they were recruited to play and did play the sport of their choice up until the filing of the litigation. Thus they would lack standing to challenge any earlier decisions which, in any event, are barred by the applicable statute of limitations. MCL 600.5805(10); *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 729 (6th Cir. 1996) (Title IX); *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (§1983).

affected both men and women student-athletes.  (*Id.* ¶ 59).  Although not specific about the number of male student-athletes affected, they do allege that the sport eliminations will reduce the degree of any disparity in the proportion of women student-athletes compared to the proportion of women students.  (*Id.* ¶ 33).  They further allege that while this "participation gap" between men and women will shrink by a significant amount, a lack of substantial proportionality between the percentage of women student-athletes and the percentage of women in the overall student body will still remain.  (*Id.*)[3]  Plaintiffs specifically allege that they are not challenging any aspects of the EMU athletics programs other than the relative number of participation opportunities available to male and female students.  (*Id.*, ¶45) ("This lawsuit is about effective accommodation only.")

The central focus of Plaintiffs' Complaint is their assertion that the above facts establish that EMU is not complying with a 1979 Policy Interpretation issued by OCR.  (Dkt#1, Complaint, ¶¶43-45, 78-79).  Specifically, Plaintiffs assert that the Policy Interpretation sets forth three alternative measures of compliance with the accommodation aspect of Title IX: (1) whether there is substantial

---

[3] In terms of the number of student-athletes affected, Plaintiffs allege that there were approximately 25 women student-athletes affected by the cuts, 8 in tennis and 17 in softball, (*id.* ¶ 2), but make no allegations about the exact number of male student-athletes on the men's wrestling and swimming & diving teams that were also eliminated.  However, they allege that before the cuts EMU would have had to add 200 women athletes to reach statistical proportionality, and that after the cuts of the men's teams that number had dropped to 120.  (Dkt#1, Compl, ¶33).

proportionality of the percentage of women student-athletes and women students, (2) whether the University has a continuing history of expanding women's athletic opportunities, or (3) whether EMU is fully satisfying the athletics interests of its female students. (*Id.* ¶¶ 43-45). Plaintiffs then allege that EMU fails to meet each alternative. (*Id.* ¶¶ 78-79).

Significantly, Plaintiffs **do not** allege that the March 2018 decision adversely impacted female student-athletes as compared to male student-athletes. Additionally, the Complaint **does not** contend that the March 2018 decision was motivated by a gender bias or that EMU or any of its agents said or did anything that suggested EMU negatively considered female student-athletes when it made the decisions to eliminate the sports. Instead, their central claim is that EMU has historically had a statistical imbalance between the percentage of its student body that is female and the percentage of its varsity student-athletes that are female, and that because the March 2018 decision did not make EMU's female student-athlete participation rate "substantially proportionate" to the gender composition of the student body, EMU violated Title IX and the Equal Protection Clause.

### III.    Argument

### A.    Standard of Review

Defendants' motion tests whether Plaintiffs have stated claims upon which relief can be granted and whether, under Fed. R. Civ. P. 8(a), they have made the

requisite "showing that [they are] entitled to relief."  Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a motion to dismiss, plaintiffs must assert sufficient factual allegations to establish that their claims are "plausible on [their] face," *i.e.*, there must be more than the mere possibility that defendants acted unlawfully.  *Id.* at 556; *see also id.* at 555 ("A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court elaborated on *Twombly*, explaining the proper two-step analysis.  <u>First</u>, although courts generally accept as true the complaint allegations, this rule is "inapplicable to legal conclusions." *Id.* at 678. In other words, courts first disregard all conclusory statements and allegations in the complaint. This is because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.  Thus, allegations based upon "information and belief" should be disregarded because they "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told

[courts] to ignore when evaluating a complaint's sufficiency."[4] *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).

Second, courts review the remaining allegations to determine whether they "plausibly" entitle the plaintiff to relief.   For a claim to be "plausible," it is insufficient that the facts alleged are "'consistent with' a defendants' liability" or that a violation is "conceivable."   556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 567).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

In *Iqbal*, a discrimination case, the Court first identified conclusory allegations that "amount[ed] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim."   *Id.* at 681 (quoting *Twombly*, *supra*).   These assertions, such as that the defendant adopted a policy "because of" its adverse effects on individuals with a certain race, religion and national origin, were not entitled to a presumption of truth.   *Id.*   At step two, the Court addressed the remaining factual allegations, which were "consistent with" discriminatory

---

[4] Plaintiffs' Complaint is replete with allegations made on "information and belief."   For example, Plaintiffs assert "on information and belief" that EMU has not taken any actions to satisfy its Title IX obligations.   (*Id.*, ¶47.   *See also id.*, ¶¶32, 47, 48, 56, 61, 63, 64, 80).

treatment, "[b]ut given more likely explanations, [the allegations did] not plausibly establish [their] purpose." *Id.* at 681.  Thus, dismissal was appropriate.

Interpreting *Twombly* and *Iqbal*, the Sixth Circuit has explained that, "the combined effect of *Twombly* and *Iqbal* require [a] plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011).  In other words, a "plaintiff must allege specific facts [to support a plausible claim] even if those facts are only within the head or hands of the defendants. The plaintiff may not use the discovery process to obtain these facts after filing suit. The language of *Iqbal*, 'not entitled to discovery,' is binding on the lower federal courts." *Id.*  Accordingly, a complaint that does not provide the "when, where, in what or by whom" to support conclusory allegations fails to state a claim.  *Center for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011); *see also id.* at 368 (noting that following *Twombly* and *Iqbal*, it is "well settled" that a complaint must contain sufficient factual allegations to plausibly state a claim for relief).

## B.   Plaintiffs Fail to State a Claim that Defendants Violated the Equal Protection Clause

"The Equal Protection Clause forbids only intentional discrimination." *Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994) (citing *Washington v. Davis*, 426 U.S. 229 (1976)).  The Equal Protection Clause

prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, §1.  "The Clause embodies the principle that all persons similarly situated should be treated alike." *Marie v. American Red Cross*, 771 F.3d 344, 361 (6th Cir. 2014) (quotation omitted).  To establish an equal protection violation, Plaintiffs must show that the action was taken "because of, not merely in spite of, its adverse impact on persons in the plaintiffs' class." *Horner*, 43 F.3d at 276 (citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979).  The Supreme Court has explained that "the type of impact sufficient in itself to prove intentional discrimination is that which is significant, stark, and unexplainable on other grounds."  *Id.* (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977)).

To establish an equal protection violation, Plaintiffs must prove that they were treated differently than similarly situated male student-athletes. *See Doe v. Ohio State Univ.,* 239 F. Supp. 3d 1048, 1082-83 (S.D. Ohio 2017) ("In order to state a claim for an equal protection violation based upon gender discrimination, Plaintiff must demonstrate that he was treated differently—under the same facts and circumstances—than a member of the opposite gender"); *Dixon v. Univ. of Toledo*, 702 F.3d 269, 278 (6th Cir. 2012) (Equal Protection Clause protects from discrimination "among similarly-situated individuals"). "Disparate treatment is a

threshold element, which [Plaintiff] must show in order to maintain [her] claim under the Equal Protection Clause." *Marie*, 771 F.3d at 361.

Here, Plaintiffs allege that "By Defendants choosing to treat male and female athletes differently by reducing the number of opportunities for females [Defendants] intentionally discriminated on the basis of sex and deprive[d] female student-athletes of their right to equal protection secured by the Fourteenth Amendment." (Dkt#1, Compl, ¶91). This is the entirety of their allegations of intentional discrimination. However, under *Iqbal* and *Twombly*, these conclusory assertions are not entitled to a presumption of truth. First, the affirmative allegations of the Complaint state that **both** men and women experienced a reduction in the number of athletic opportunities, and therefore, the elimination of some women's opportunities does not in any way support a plausible claim that EMU treated men and women differently. Plaintiffs glaring failure to allege that women were intentionally disproportionately affected is particularly significant in light of the other allegations clearly indicating that it was men who were disproportionately affected.

Moreover, the mere fact that varsity sports teams at EMU, as at most universities are designated as male or female does not turn the gender-neutral budget decision to cut back the overall athletics program into a prohibited gender classification or an inherently gender-based decision. Courts applying the Equal

Protection Clause have long held that making decision with knowledge or concern about how the decision may affect persons of different demographic backgrounds does not create an impermissible classification.  For example in *Spulock v. Fox,* 716 F.3d 383 (6th Cir. 2013), the plaintiffs challenged a school redistricting plan that was adopted to equalize utilization of the district's various physical facilities. The plaintiffs alleged that the plan was an impermissible racial classification because the drafters had sought and considered data regarding racial composition of the schools before the adoption of the plan and projections of how those compositions would change under various versions of the plan.  The Sixth Circuit affirmed a judgment to the defendants, specifically rejecting the theory that consideration of racial data constituted use of racial classifications in formulating the plan.   It explained that "[r]acial classification requires more than the *consideration* of racial data.  If consideration of racial data were alone sufficient to trigger strict scrutiny, then policymakers would be required to blind themselves to the demographic realities of their jurisdictions and the potential demographic consequences of their decisions."  716 F.3d at 394 (emphasis in original).

Likewise in *Doe v. Lower Merion Sch. Dist.,* 665 F.3d 524 (3d Cir. 2011), the court held that the formulation of a school redistricting plan could not be considered a form of racial classification simply because it was done with conscious consideration of the demographics of the neighborhoods. There, the

court held that "[t]he consideration or awareness of race while developing or selecting a policy, however, is not in and of itself a racial classification. … Designing a policy 'with racial factors in mind' does not constitute a racial classification if the policy is facially neutral and is administered in a race-neutral fashion."  665 F.3d at 548.

Here, EMU made a decision to reduce athletic spending.  That its decision was carried out with knowledge of which teams were men's and which were women's is insufficient to establish an impermissible gender classification or the existence of intentional discrimination.  Consequently, Plaintiffs fail to state a claim on which relief can be granted.

**C.     Plaintiffs Fail to State a Title IX Claim Because They Fail to Allege Intentional Discrimination and Because There is No Private Right of Action to Enforce the Regulation Upon Which They Rely.**

Plaintiffs' Title IX claim fails for similar reasons.  First, §901 of Title IX, 20 U.S.C. §1681, the only section from which a private right of action under Title IX can be implied, prohibits only intentional discrimination based on sex.  As discussed above, Plaintiffs do not allege any intentional discrimination on the basis of gender.  To the extent Plaintiff seek to get around that defect by claiming EMU failed to otherwise comply with the Policy Interpretation, failure to comply with the Policy Interpretation absent proof of intentional discrimination does not permit a private right of action.  The Policy Interpretation was promulgated under §902,

which does not itself support a private right of action. Thus, to the extent the Policy Interpretation prohibits anything more than intentional discrimination, it is not enforceable by way of a private action.

Section 901 prohibits only intentional discrimination on account of sex. *Jackson v. Birmingham Bd of Educ.,* 544 U.S. 167, 174 (2005) (private right of action under Title IX exists for retaliation for filing a complaint of sex discrimination because retaliation "constitutes intentional 'discrimination' 'on the basis of sex'"); *Horner v. Kentucky High School Athletic Ass'n,* 206 F.3d 685, 692 (6th Cir. 2000) (concluding that intent to discriminate is required to prove a Title IX claim.); *Alexander v. Sandoval*, 532 U.S. 275 (2001) (holding that identical language of §601 of Title VI, 42 U.S.C. §2000d, prohibits only intentional discrimination). Thus, for Plaintiffs to state a claim they must allege intentional disparate treatment of women.

As discussed above, Plaintiffs do not allege intentional discrimination that would violate §901. The essence of an intentional discrimination disparate treatment claim is to show that the plaintiffs were treated less favorably than members of other groups and that the disfavorable treatment was motivated by a prohibited demographic factor. *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977) ("'Disparate treatment' … is the most easily understood type of discrimination. The employer simply treats some people less favorably than

others because of their race, color, religion, sex, or national origin.   Proof of discriminatory motive is critical, …”).

Here, Plaintiffs make no allegation that women were treated disfavorably in comparison to men.  Their attempt to fill the gap by alleging a statistical disparity between the percentage of women student-athletes and the percentage of women students flies in the face of the express language of §901(b), which expressly prohibits finding a violation based solely on statistical disparity. This section states:

> Nothing contained in [§1681(a)] shall be interpreted to require any educational institution to grant preferential or disparate treatment to the members of one sex on account of an imbalance which may exist with respect to the total number or percentage of persons of that sex participating in or receiving the benefits of any federally supported program or activity, in comparison with the total number or percentage of person of that sex in any community, State, section or other area: provided that [consideration of statistical evidence of imbalances will be allowed.]

20 U.S.C. §1681(b).  All Plaintiffs allege is a statistical disparity, and perhaps that the disparity ought to be shrinking faster than it is.  But that is simply not enough to support a claim of intentional discrimination in violation of §901.

Assuming the truth of Plaintiffs' allegation that EMU's conduct, although not intentionally discriminatory, nonetheless violates the Policy Interpretation, such an allegation is insufficient to support a private right of action. *Alexander v. Sandoval*, 532 U.S. 275, 285-90 (2001).   *Sandoval* involved a challenge to

Alabama's decision to provide driver's license exams only in English. The plaintiff claimed that the decision violated §601 of Title VI because it had a disparate adverse impact based on national origin and race, and pointed to administrative regulations that prohibited practices having the effect of discriminating on account of national origin, in addition to those which were intentionally discriminatory. The district court enjoined the English-only rule, and the Eleventh Circuit affirmed. *Id.* at 279.

The Supreme Court reversed, holding first that §601 created a private right of action only for intentional discrimination, and therefore the plaintiff could not imply a private right of action for disparate impact discrimination from that section. 532 U.S. at 280. Second, the Court assumed that the regulations were a proper exercise of the agency's authority under §602 of Title VI, 42 U.S.C. § 2000d-1. The Court then held that a suit to enforce the regulation to the extent that it prohibited more than intentional discrimination could be allowed only if §602, itself, implied the existence of a private right of action. *Id.* Finally, the Court held that the language of §602 did not create an implied private cause of action. The Court relied on the absence of any "rights-creating language" in §602, as well as the fact that §602 contained detailed procedures for administrative enforcement of any regulations promulgated, which rather than provide a private right of action, "suggest[ed] the opposite." *Id.* at 288-89. The Court explained that these

14

"elaborate restrictions on agency enforcement . . . tend to contradict a congressional intent to create privately enforceable rights through § 602 itself. The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 290.

*Sandoval* is directly applicable here because the language of §§601 and 602 of Title VI interpreted in *Sandoval* are identical to that of §§901 and 902 of Title IX. Section 901 of Title IX is identical to §601 of Title VI except in substituting the word "sex" for "race, color or national origin." *Cannon v. Univ. of Chicago,* 441 U.S. 677, 695 (1979) ("Except for the substitution of the word 'sex' in Title IX to replace the words 'race, color, or national origin' in Title VI the two statutes are identical …"). Thus the two laws have always been interpreted in *pari materia*. *Id. at* 696-703. Just as in Title VI, the very next section of Title IX, §902, 20 U.S.C. §1682, authorizes federal agencies to promulgate regulations to effectuate the provisions of §901. Significantly, the language of §902 is identical to that of §602, with the exception that the word "education" is inserted to modify "program or activity," and the reference to §601 is changed to §901. *Compare* 20 U.S.C. §1682 *with* 42 U.S.C. §2000d-1. Section 902 contains the exact same detailed requirements for implementation and administrative enforcement of the regulations as does §602. Like §602, §902 contains no "rights creating language" but is instead directed solely to the federal agencies which extend federal assistance:

> Each Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity … is authorized and directed to effectuate the provisions of section 1681 of this title with respect to such program or activity by issuing rules, regulations or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken….

20 U.S.C. §1682. Given the identity of the language and substance between §902 and §602, §902 must be held not to imply a private right of action to independently enforce the regulations promulgated thereunder to the extent they prohibit anything more than intentional discrimination.

In summary, *Sandoval* makes three things clear. First, §901 of Title IX, prohibits only intentional discrimination based on gender. Second, §902 of Title IX, which authorizes the DOE to issue and enforce regulations, does not support an implied private right of action based on those regulations. Third, as a result, regulations adopted under §902, which impose duties or liabilities that exceed those of §901 are not enforceable by a private litigant. This is exactly the case with Plaintiffs' claim here.

This case is indistinguishable from *Sandoval*. Both involve attempts to imply a private right of action from regulations or sub-regulation-level administrative policy guidance that expand the obligations of a federal funds recipient beyond that required by the statute. Even if that expansion is a legitimate exercise of the authority granted the agency for purposes of its administrative

16

enforcement of the law, a private cause of action is not allowed.

**D.     The Individual Defendants are Entitled to Qualified Immunity**

Government employees, such as the individual defendants, are immune from civil liability[5] under 42 U.S.C. §1983 when performing discretionary duties, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Simmonds v. Genesee Cnty*, 682 F.3d 438, 443 (6th Cir. 2012) (quotations omitted). Qualified immunity prevents employees from being held liable for reasonable mistakes of law, fact, or mixed questions of law and fact made while acting within their scope of authority. *Id*.

To determine whether qualified immunity shields an employee from §1983 liability, the Sixth Circuit applies a two-prong test and inquires: (1) whether the employee violated a constitutional right; and (2) if so, whether that constitutional right was so clearly established that a "reasonable official would understand that what he is doing violates that right." *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194,

---

[5] Plaintiffs' Complaint seeks "compensatory damages and other monetary relief." (Dkt#1, Complaint at p. 33, ¶E). However, during the hearing on Plaintiffs' Motion for Temporary Restraining Order and for Preliminary Injunction, Plaintiffs' counsel confirmed that Plaintiffs are not seeking money damages. (Ex 1, Transcript at 42 ("Court:  Are you seeking money damages as well?  Ms. Bullock:  No, Your Honor.  Attorney's fees would be the applicable monetary damage.  But nothing beyond that.")).  Because Plaintiffs' Complaint continues to seek money damages and Plaintiffs declined to concur that the individual defendants are protected by qualified immunity, Defendants have included the following argument.

202, (2001)). "In the absence of a serious factual dispute, a party's entitlement to qualified immunity is a question of law reserved for the judge." *Binelli v. Charter Twp of Flint*, 488 F. App'x 95, 97 (6th Cir. 2012) (emphasis added).[6]

"[I]t is well-settled that qualified immunity must be assessed in the context of each individual's specific conduct." *Stoudemire v. Michigan Dept. of Corrections*, 705 F.3d 560, 570 (6th Cir. 2013) (quotations omitted). Once a defendant raises qualified immunity, "the burden is on the plaintiff to demonstrate that the official [is] not entitled to qualified immunity," *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir 2006), by alleging "facts sufficient to indicate that the [employee's] act in question violated clearly established law at the time the act was committed," *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). To defeat qualified immunity, a plaintiff "must present evidence sufficient to create a genuine issue as to whether the defendant committed the acts that violated the law." *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994).

Plaintiffs are unable to explain how each individual defendant committed specific acts which violated their constitutional rights. Nor are they able to establish that their alleged rights were clearly established such that each individual defendant would have understood that any of those actions violated Plaintiffs' constitutional rights. Moreover, the rights Plaintiffs allege were violated were not

---

[6] Unpublished cases are attached as Exhibit 2.

clearly established in the present context. "For the right to be clearly established the case law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Gragg v. Kentucky Cabinet for Workforce Development*, 289 F.3d 958, 964 (6th Cir. 2002) (quotation omitted). "Because the focus is on whether the [employee] had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the [employee's] conduct would violate the Constitution, the [employee] should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 192, 198 (2004). Courts must "ask whether a right was clearly established at a level of great particularity and detail." *Binelli*, 488 F. App'x at 97 (citing *Anderson v. Creighton*, 483 US 635, 639-40 (1987)). Furthermore, qualified immunity protects an employee who "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau*, 543 U.S. at 198. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992); *Bing v. City of Whitehall*, 456 F.3d 555, 571 (6th Cir. 2006) (holding that

employees' "actions fall near enough to the 'hazy' border separating illegal from legal conduct for qualified immunity to attach").

As relevant here, "Plaintiffs do not have a constitutional right to participate in intercollegiate athletics." *Horner*, 43 F.3d at 275.  Moreover, Plaintiffs cannot identify any clear, unambiguous case law establishing that the decision to eliminate male and female athletic teams at the same time violates the Equal Protection Clause.  Thus, Plaintiffs' rights are not "clearly established" and the individual defendants are qualifiedly immune.

## IV.   Conclusion

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion and dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

/s/Brian M. Schwartz
Miller, Canfield, Paddock and Stone, P.L.C.
Attorneys for Defendants
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com
P69018

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 20, 2018, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

/s/Brian M. Schwartz
Miller, Canfield, Paddock and Stone, P.L.C.
Attorneys for Defendants
150 West Jefferson, Suite 2500
Detroit, Michigan  48226
(313) 963-6420
schwartzb@millercanfield.com
P69018

31835396.4\025676-00117