UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARIE MAYEROVA and ARIANA CHRETIEN, individually and on behalf of all those similarly situated** | : | Case No. 18-cv- 11909-GCS-RSW |
| | : | |
| Plaintiffs, | : | Hon. George Caram Steeh |
| | : | Mag. R. Steven Whalen |
| v. | : | |
| | : | |
| **EASTERN MICHIGAN UNIVERSITY, JAMES SMITH, SCOTT WETHERBEE, and THE BOARD OF REGENTS,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

## Consent Decree

This Consent Decree is made, subject to the Court's approval, between Marie Mayerova and Ariana Chretien, individually and on behalf of the class they represent (collectively "Plaintiffs"), and Defendants Eastern Michigan University and the Board of Regents (collectively the "University"). Plaintiffs and University are collectively referred to in this Consent Decree as the "Parties."

This Consent Decree resolves each of the claims stated in the September 6, 2018 Amended Complaint.

## Background

1. In March 2018, the University announced its intention to eliminate four varsity sports teams: men's wrestling, men's swimming and diving, women's softball, and women's tennis.

2. On June 15, 2018, Plaintiffs filed the instant lawsuit against the University asserting claims under Title IX and the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs' initial Complaint alleged that the lawsuit was about effective accommodation of student interests and abilities under Title IX, its implementing regulations, and guidance issued by the United States Department of Education's Office for Civil Rights ("OCR"). (Dkt#1).

3. On June 15, 2018, Plaintiffs filed a Motion for Temporary Restraining Order and Injunction. (Dkt#3).

4. On July 17, 2018, the Court held a hearing on Plaintiffs' Motion.

5. On August 20, 2018, the University filed a Motion to Dismiss. (Dkt#39).

6. On September 6, 2018, Plaintiffs filed an Amended Complaint. (Dkt#41).

7. On September 10, 2018, Plaintiffs filed a Response to the University's Motion to Dismiss. (Dkt#42).

8.     On September 27, 2018, the Court entered an Opinion and Order Granting Plaintiffs' Motion for Preliminary Injunction. (Dkt#45). That ruling set a status conference for October 23, 2018 to discuss the implementation of the Court's Order. (*Id.*)

9.     On October 12, 2018, the University filed an Answer. (Dkt#48).

10.    On October 25, 2018, the University filed a Notice of Appeal of the Court's September 27, 2018 Opinion and Order. (Dkt#49).

11.    On February 12, 2019, the Court entered an Order Granting Injunctive Relief. (Dkt#55).

12.    On February 21, 2019, the University filed a Notice of Appeal of the Court's February 12, 2019 Order. (Dkt#56).

13.    On January 7, 2020, the parties filed a Joint Motion seeking class certification (Dkt#62). On January 16, 2020, the Court granted the motion and certified a class pursuant to Federal Rule of Civil Procedure 23(b)(2) defined as:

> All female students and prospective students who enrolled at, applied for admission to, or were deterred from applying for admission due to the University's alleged sex discrimination in allocation of athletic participation opportunities or the allocation of athletic financial assistance and benefits provided to varsity athletes to, Eastern Michigan University since June 15, 2015, as well as future female students and prospective students. (DKT#64).

14. Since the Court's September 27, 2018 Opinion and Order and its February 12, 2019 Order, the parties have engaged in discussions regarding mutually agreeable resolution of the litigation. In lieu of continuing the present litigation, the parties have agreed to settle all claims pursuant to the terms set forth in this decree. The parties make the promises and representations contained herein for good and valuable consideration, the adequacy of which they hereby acknowledge.

## TERMS

**A. General.**

15. The University agrees to take necessary and reasonable steps to achieve sustainable Substantial Proportionality between the ratio of male to female athletic participation opportunities in its varsity sports programs in comparison to the ratio of male to female full-time undergraduate students attending the University. The Parties anticipate that the below-described specific actions will achieve such Substantial Proportionality by the end of the 2022-23 academic year.

16. Pursuant to the terms of this Consent Decree as specified subsequently herein, during the term of this Consent Decree, the parties agree to exchange information and confer regarding progress toward achieving Substantial Proportionality, and the possibility of adjustments to specific steps stated below to maintain progress towards achieving Substantial Proportionality. For purposes of this Consent Decree, Substantial Proportionality shall mean that the percentage of

athletic participation opportunities for a particular gender shall be equal to or within 1.8 percentage points–plus or minus–of the percentage of that same gender in the fulltime undergraduate student body.

17. During the term of the Consent Decree the University shall not eliminate any women's sports programs unless either a) the elimination is the result of circumstances beyond its control, such circumstances must be demonstrated to and approved by the Court or b) the elimination will not cause participation of women to fall below the level of Substantial Proportionality as defined above.

**A.    Tennis**

18. The University will continue to sponsor its women's varsity tennis team. The University will take necessary steps to recruit a full team capable of competing in the Spring 2020 season; including authorizing the head coach of the women's tennis team to award athletic financial assistance to the maximum allowed by the NCAA, which is currently equal to the equivalent of 8 full scholarships for women's tennis athletes; and providing appropriate practice/competition facilities.

**B.    Title IX Compliance**

19. The University acknowledges its obligation under the law to comply with Title IX in operations of its athletic program. Plaintiffs agree they will not seek further relief against the University for alleged violations of Title IX during the term of this Consent Decree.

20. **Lacrosse.** The University agrees to add a varsity women's lacrosse program that will provide approximately 30-35 participation opportunities for female athletes, with competition to begin by Spring 2022. In order to facilitate starting the new program the University will:

   a. Hire a women's varsity lacrosse head coach no later than Spring 2020;

   b. Provide recruiting resources and support to develop current club players or students with an interest in playing lacrosse and to recruit prospective student-athletes during the 2019-2020 academic year with the goal of beginning varsity practices in Fall 2020;

   c. Throughout 2020-21 work with head coach to recruit athletes, and to develop facilities including field, press box, locker rooms coaches' office, and hire an assistant coach;

   d. Authorize the head coach of the women's lacrosse team to award athletic financial assistance to the maximum allowed by the NCAA, which is currently equal to the equivalent of 12 full scholarships for women's lacrosse athletes;

   e. Ensure that there are appropriate practice venues available to the lacrosse team ready for use by Fall 2020;

   f. Retaining an assistant coach during the 2020-21 academic year;

6

    g. By the Fall 2021 hire a second assistant coach;

    h. Begin competitions in the 2021-2022 academic year with a team roster of approximately 30 to 35 female athletes; and

    i. Take any other necessary steps to ensure the women's varsity lacrosse team has all the necessary equipment, facilities, and support needed to be a successful, competitive program.

21. **Expanding current team support.**

    a. During the term of this decree, the University will annually invite coaches of women's varsity teams to identify areas in which they believe additional resources are required to establish compliance with 34 CFR §106.41(c) and to request that such additional resources be provided. The coaches may respond directly to the University, the Athletic Director, a Consultant retained by the University, or directly to the Referee. All responses and requests received shall be reviewed by the University in consultation with the Referee (described below). The review shall be to determine those areas in which additional resources are required and to prioritize spending to most effectively achieve overall equity as required by Section 106.41 in light of the University's overall athletics spending and provision of resources.

7

    b. In addition to the amount budgeted to begin the new lacrosse program as shown in Exhibit A, the University commits that between the 2019-20 academic year through the 2022-23 academic year it will spend on women's sports programs a total of $2,000,000 in addition to the total amount budgeted for women's sports in the 2018-19 academic year multiplied by four years and adjusted for a two percent per year inflation factor. The $2,000,000 amount represents the accumulated total operating budget and capital spending over four years, and not an annual increment to spending. The University shall provide annual reports to the Referee providing descriptions of the amount spent and the purpose of the spending.

22. **Roster Management**. In addition to the upgrade of women's lacrosse to varsity status the University agrees to take such additional, reasonable steps in managing roster sizes of men's and women's teams as are necessary to achieve Substantial Proportionality as defined above. Prior to finalizing any roster management guidelines, the University shall consult with the Referee to obtain his/her input and approval. The Parties agree that this Consent Decree neither requires nor prohibits the University from eliminating any men's varsity team.

## C. Referee to Monitor Compliance

23. The Parties will agree upon, and the Court will appoint, a "Referee" who will have the responsibility for monitoring compliance with the University's obligations under this Consent Decree through June 30, 2023 or until the university reaches Substantial Proportionality as defined above, whichever is earlier. Subject to this Court's approval, Daniella Irle, will serve as the Referee.

24. To the extent the Referee is unable to complete the term of this Consent Decree, the Referee will provide notice to the parties of at least three months. The parties will agree to another qualified Referee subject to the Court's approval.

25. Daniella Irle has disclosed that he/she does not have a relationship to the Parties, attorneys, action, or court that would require disqualification of a judge under 28 U.S.C. §455.

26. The parties agree that if at any time Plaintiffs believe the Referee is not serving in his or her role as contemplated by this Decree and by any obligations set by the Court, Plaintiffs may file a motion with the Court seeking removal of the Referee and, if the Court removes the Referee, the parties will agree to another qualified Referee, subject to the Court's approval.

27. The University shall provide the Referee with full rosters and budgets for each men's and women's varsity sport before each sport's competitive season. The University shall also provide the Referee a roster for each men's and women's

varsity sport during or soon after each sport's competitive season. The University shall also provide the Referee with information regarding the gender composition of its full-time undergraduate student body. Copies of all documents provided to the Referee will be provided to Plaintiffs' counsel as soon as reasonably practical.

28. The University and its Consultant, if any, shall meet at least once per semester with the Referee, beginning with the Spring 2020 semester, to discuss proposed actions regarding the allocation of participation opportunities, allocation of athletic budgets to the varsity programs and facilities or equipment needs or changes for varsity sports. During these meetings, the University and the Consultant shall share with the referee recommendations regarding the above topics made by the Consultant together with the factual basis for the recommendations. The University shall not finalize any material activities in this regard without input and approval from the Referee.

29. The Referee shall be responsible for preparing a Report and Recommendation summarizing the University's compliance with this Consent Decree. The Report and Recommendation shall include information about the ratio of male and female athletic participation opportunities in comparison to the ratio of male and female full-time undergraduate students. The Report and Recommendation shall be provided to the Court by August 30th of each year this Consent Decree is in effect.

30. Nothing in Section C of this Consent Decree shall limit the ability of the University to retain a Title IX Consultant. The term "Consultant" as used throughout this Decree shall refer to such a Title IX consultant as may be retained by the University. The Consultant shall be different than the Referee described in this Section C. The University understands that transparency increases and supports efforts towards compliance and rebuilding the goodwill of all students, alumni, faculty, and staff towards the University while it brings its athletic department in compliance with Title IX. Accordingly, the University agrees that facts and data provided to or by the Consultant are not protected by the attorney-client privilege. Additionally, the University agrees that the attorney-client privilege may only apply to communications made for the purpose of obtaining legal advice and is therefore unlikely to apply to most communications to/from the Consultant. However, nothing in this paragraph shall be construed as a waiver of any legitimately applicable privilege that may be asserted by either Defendants or Plaintiffs. To the extent Plaintiffs' counsel believe that information is being withheld pursuant to an invalid claim of privilege, the issue shall be presented to the Court for a final and binding decision.

**D.  Monetary Relief**

31. The University agrees to pay named class representatives a total of $125,000. This amount will be paid as follows within 30 days of the Court's final

11

approval of this Consent Decree, in satisfaction of their individual claims: (a) Marie Mayerova and Ariana Chretien will each receive a check in the amount of $25,000 as compensation for general damages; (b) Arianna Chretien will receive an additional check in the amount of $75,000. As a condition of such payment, each of the named class representatives will execute a full and complete release of all claims against the University.

32. Following final approval of this Consent Decree, the University agrees to pay reasonable attorneys' fees and costs connected to the litigation of this action to Newkirk Zwagerman, P.L.C., in an amount to be determined by agreement of the parties or by the Court. In the event the parties are not able to reach agreement on the amount of attorneys' fees and costs, the parties agree to refer the fees and costs issue to the Court for determination on the amount of fees and costs. The University agrees to not make a "degree of success" argument and agrees that the amount due is the lodestar of reasonable hours multiplied by a reasonable hourly rate. The Plaintiffs agree to not make an enhancement argument. To encourage resolution of the attorneys' fees and costs issue without the need for the Court's intervention, the Parties agree that the Court has discretion to award reasonable attorneys' fees incurred regarding the briefing of the fee issue to the extent that the Court determines that one side has prevailed on the fee issues presented.

**E.     Dismissal of Individual Defendants**

33. Plaintiffs agree to dismiss all claims against Scott Wetherbee and James Smith, with prejudice and without attorneys' fees and costs.

**F.     Class Notice**

34. Pursuant to Federal Rule of Civil Procedure 23(e), the parties agree that notice of this proposed Consent Decree should be provided to all members of the class in a form approved by the Court. The parties propose that the Court approve the form of notice set forth in **Exhibit B**.

35. Upon the Court's approval of the form of notice, the University shall timely transmit the notice by electronic mail and/or such other reasonable means as the Court may direct to all current female University students and all recruited female student-athletes.

36. The University shall be responsible for all costs of providing the notice.

37. Upon the Court's final approval of this Consent Decree, the University shall provide notice of such approval and of the availability of copies of this Consent Decree to all current female University students, all recruited female student-athletes, all personnel in the University's athletic department, and any other persons who the University expects to participate in the implementation of this Consent Decree.

**G.     General Provisions**

38. This Consent Decree shall remain in effect through June 30, 2023, or until the University reaches Substantial Proportionality as defined above and the University has allocated the additional funds to women's sports as defined in Paragraph 21(b), whichever is earlier.

39. This Consent Decree embodies a compromise that is intended to resolve the pending litigation between the parties. Neither Plaintiffs nor the University intend that this Consent Decree shall have precedential effect with respect to the parties' legal positions regarding the requirements of Title IX, or with respect to their rights or obligations after the termination of the Consent Decree. Nothing in this Consent Decree is intended or shall be construed to limit Plaintiffs' rights to challenge the University's compliance with Title IX after the termination of this Consent Decree.

40. Nothing in this Consent Decree is intended to obligate the University to maintain any men's or women's athletic team for any duration other than as specifically set forth in this Consent Decree.

41. The University agrees that its Athletic Department and Board of Regents members and the University's counsel will not disparage or denigrate the efforts of the Plaintiffs and the proposed class regarding the claims at issue in this lawsuit. Plaintiffs and Plaintiffs' counsel agree that they will not disparage or

denigrate any actions taken by the University regarding the claims at issue in this lawsuit.

42.  Plaintiffs, on behalf of the class, agree that during the term of this Consent Decree, provided that the University complies with the requirements of this Consent Decree, they will not challenge the University's compliance with its obligations with respect to athletics under any law, including but not limited to Title IX, its implementing regulations, guidance issued by OCR, the Equal Protection Clause of the Fourteenth Amendment, and the Elliott-Larsen Civil Rights Act.

43.  The University waives any rights it may have to appeal any decision, order, or judgment rendered to date in this litigation.

44.  The Parties mutually release each other from all claims and causes of action that were asserted, could have been asserted, or otherwise relate to this litigation, whether known or unknown, that arose or may arise up to the date of the Court's final approval of this Consent Decree, subject only to the Parties' respective compliance with the terms of this Consent Decree.

45.  The terms of this Consent Decree have been negotiated by the Parties with the assistance of their respective legal counsel. By the execution hereof, the Parties expressly warrant that they have read this Consent Decree, understand its terms, have had the opportunity to confer with legal counsel regarding its contents, and are signing this Consent Decree of their own free will and act. The Parties further

expressly warrant that they are over the age of eighteen (18) years and have no disabilities, whether legal or otherwise, which could invalidate this Consent Decree.

46. This Consent Decree shall be attached to the Court's Order approving this Consent Decree. The Court will retain jurisdiction over this action solely for the purposes of enforcing the terms of this Consent Decree. Counts I, II, III, IV and V of the Amended Complaint will be dismissed in their entirety, with prejudice, upon termination of the Consent Decree. The Parties will submit a stipulation for the dismissal of all claims against Scott Wetherbee and James Smith, with prejudice and without fees and costs.

47. If the Court declines to approve this Consent Decree, then the Parties will return to their positions with respect to this litigation as if they had never executed this Consent Decree.

48. This Consent Decree may be executed in counterparts by original, facsimile, or electronic signature. Plaintiffs' counsel will gather all signatures, and the Consent Decree will be deemed fully executed when all parties and their counsel have returned their executed signature pages to Plaintiffs' counsel.

49. In the event that this Consent Decree or any provision hereof is construed or determined to be ambiguous by any court of competent jurisdiction, the Parties agree that each Party, through its attorney, has contributed to the preparation of this Consent Decree and that the Parties have jointly written or composed the

clauses contained herein, and that no Party shall be given any advantage over the other Party under the laws of construction of instruments based upon the authorship of this Consent Decree.

50. It is still further understood and agreed that if any provision of this Consent Decree is or may be held by a court of competent jurisdiction to be invalid, void, or unenforceable, that provision shall be severed, and the remaining provisions shall nevertheless survive and continue in full force and effect without being impaired or invalidated in any way.

51. This Consent Decree embodies the entire agreement between the parties and supersedes any and all prior agreements, arrangements, or understandings between the Parties relating to this subject matter. This Consent Decree may not be modified except by order of the Court or in a writing signed by all parties and approved by the Court.

52. All Parties agree to cooperate fully to execute any and all supplementary documents and take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Consent Decree.

SO ORDERED.

Dated: May 21, 2020                    s/George Caram Steeh
                                       GEORGE CARAM STEEH
                                       United States District Judge

Dated: January 21, 2020

Counsel for Marie Mayerova, et al., Plaintiffs

*/s/ Lori Bullock*
NEWKIRK ZWAGERMAN, PLC
Jill Zwagerman, AT0000324
Beatriz Mate-Kodjo AT0012331
Lori Bullock AT0012240
Attorney for Plaintiffs
521 E. Locust Street, Suite 300
Des Moines, IA 50309
Telephone: (515) 883-2000
Fax: (515) 883-2004
jzwagerman@newkirklaw.com
bmate-kodjo@newkirklaw.com
lbullock@newkirklaw.com

BOGAS & KONCIUS, PC
BRIAN E. KONCIUS (P69278)
Local Counsel for Plaintiffs
31700 Telegraph Road, Suite 160
Bingham Farms, MI 48025
Telephone: (248) 502-5001
bkoncius@kbogaslaw.com

**Plaintiffs**

_____
MARIE MAYEROVA

Date: 4-21-2020

_____
ARIANA CHRETIEN

Date: 4/21/20

Dated: January 21, 2020

Counsel for Eastern Michigan
University, et al.,
Defendants

_____
MILLER, CANFIELD, PADDOCK
& STONE, PLC
Brian M. Schwartz (P69018)
Robert T. Zielinski
Megan R. Norris (P39318)
Jacob Hogg (P81275)
Attorneys for Defendants
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
schwartzb@millercanfield.com
zielinski@millercanfield.com
norris@millercanfield.com
hogg@millercanfield.com

**Defendants**

_____
Signature

Dr. James Smith, President
**Eastern Michigan University**
**On Behalf of Eastern Michigan University Board of Regents**

Date: 4/3/2020

20